**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| Ronald Friedman, as trustee for the SportCo Creditor's Liquidation Trust,<br>　　　　　　　　　　　　　　　Plaintiff,<br>v.<br>Wellspring Capital Management, LLC, Wellspring Capital Partners IV, L.P., WCM Genpar IV, L.P., WCM Genpar IV GP, LLC, Alexander E. Carles, Bradley Johnson, F. Hewitt Grant, Charles E. Walker, Jr., Todd Boehly, Bernard Ziomek, and Andrew Kupchik,<br>　　　　　　　　　　　　　　　Defendants. | Adversary No. 19-80071-dd<br><br>**CHARLES E. WALKER, JR.'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS** |

　　　　Charles E. Walker, Jr. ("Mr. Walker"), in support of his Motion to Dismiss [Doc. No. 90, the "Motion"] hereby replies to Plaintiff's Omnibus Response to Defendant's Motion to Dismiss the First Amended Complaint [Doc. No. 112, the "Response"]. Friedman's Response advances no plausible claim whereby he, standing in the shoes of and acting principally for the benefit of Prospect Capital Corp. ("Prospect"), can now use the law of fraudulent conveyance to renege on the mandates of Prospect's loans now that its investments prove unsound. The Response has a glaring absence of any decision by any court ever permitting a lender who mandated a shareholder dividend, buyout, or other transfer from its loan to later use the Statute of Elizabeth, the UFCA, or the UFTA to rake back that transfer. Therefore, Mr. Walker's Motion to Dismiss the frivolous fraud claims against him must be granted, and Mr. Walker should be permitted to file a petition for fees and costs against Friedman and his predecessor, Prospect, for having to defend this capricious action at substantial reputational and financial cost.

I.　　**FRIEDMAN CONCEDES THE APPLICABLE LEGAL STANDARD**

　　　　Friedman concedes that the applicable legal standard for evaluating the Motion is the "facial plausibility" standard, and he does not oppose Mr. Walker's contention that Fed. R. Civ. P.

Rule 9(b)'s elevated pleading burden applies to Friedman's claims. [Response, p. 12.] However, Friedman expends much effort re-narrating the allegations of his Amended Complaint. [Response, pp. 1-12.] The court should disregard this effort and any inconsistencies between the Response and the Amended Complaint; the court's evaluation of the sufficiency of the Complaint is rightly based on the Amended Complaint itself rather than Friedman's effort to characterize it in his memorandum. *See* Ashcroft v. Iqbal, 556 U.S. 662, 674 (2009); *see also* Woods v. City of Greensboro, 855 F.3d 639, 642 (4th Cir. 2017) (the court may consider "well-pleaded allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and of unquestioned authenticity.")

II. **FRIEDMAN'S RESPONSE FAILS TO DEMONSTRATE THAT HE, STANDING IN THE SHOES OF THE LENDER WHO MANDATED BOTH TRANSFERS TO AN INNOCENT SHAREHOLDER AS A MATERIAL TERM OF BOTH LOANS, NOW POSSESSES ANY CLAIM TO UNWIND THOSE TRANSFERS AS FRAUDULENT UNDER EITHER NEW YORK OR SOUTH CAROLINA LAW.**

Friedman first contends that South Carolina law applies to his claims against Mr. Walker instead of New York law as provided in the Loan agreements.[1] [Response pp. 13-24.] Tellingly, Friedman never argues that his claims against Mr. Walker, who is a third-party beneficiary of the Loan agreements entered by Freidman's predecessor and assignor [Doc Nos. 91-3 and 91-4], can survive Mr. Walker's Motion under New York law. Since New York law is the "applicable law" for the purpose of this court's analysis under 11 U.S.C. § 544(b)(1), Friedman fails to state any claim against Mr. Walker in the Amended Complaint, and it must be dismissed.

Even if South Carolina law applies, Friedman still fails to state a claim against Mr. Walker under the Statute of Elizabeth. Friedman does not dispute that, in order to state such a claim, he must plead with specificity facts to satisfy the two requirements of 11 U.S.C. § 544(b). Rather,

---

[1] For the reasoning stated in Wellsprings Defendants' reply [Doc. No. 118], which Mr. Walker hereby incorporates by reference for the sake of brevity, Friedman is incorrect on this issue.

2

Friedman concedes his allegations can only survive the Motion if Friedman now stands in the shoes of a specific triggering unsecured creditor who: (1) held an allowable unsecured claim on the Debtors' Petition Date; and (2) could have asserted the claims against Mr. Walker now set forth in the Amended Complaint under applicable state law. [Response, p. 28.] Because Friedman fails to identify with specificity any creditor who could have asserted Friedman's claims against Mr. Walker under South Carolina law, Friedman's claims against Mr. Walker must fail.

> A. **Friedman concedes he can only state a claim if Prospect is an "existing" creditor**, **a fiction easily dispelled as to the 2012 Walker Distribution.**

Friedman's only allegation in the Amended Complaint regarding the "triggering creditor" in whose shoes he now claims to stand follows:

> At all times relevant hereto, there have been one or more creditors, including, without limitation, Prospect, who have held and still hold unsecured claims against [Ellett and SportCo] that were and are allowable under 11 U.S.C. § 502. These creditors have claims under the South Carolina Statute of Elizabeth against the Transferee Defendants.

[Doc. No. 58 §§ 72, 82.] Therefore, even though Friedman makes occasional references to "Summit" in his Response, Prospect is the only "triggering creditor" that Friedman identifies in the Amended Complaint with any of the specificity required by Fed. R. Civ. P. Rule 9(b).

Standing in the shoes of Prospect, Friedman concedes he cannot state a claim for actual fraud against Mr. Walker. [Response, pp. 25 - 26.] Friedman makes no effort to rebut Mr. Walker's argument that an intent to defraud cannot be inferred where less than .05% of a loan transaction is distributed to a shareholder many years prior to any loan default. Moreover, Friedman cannot escape the fact that Prospect made the Loans for the stated purpose of refinancing the Borrowers' existing debt and to perform debt financed distributions to SportCo shareholders, including Mr.

Walker; this type of investment is often referred to as a leveraged recapitalization.[2] Rather, Friedman attempts only to justify his claims against Mr. Walker under the "constructive fraud" theory of relief available to "existing" creditors lacking notice of the transfer, meaning his claims rely entirely on the postulate that Prospect was an "existing" creditor at the time of the each distribution to Mr. Walker. [Response, p. 25.]

Friedman's claim to be standing in the shoes of an "existing" creditor as he attempts to rake back the distributions lacks any merit based on the allegations before this court, particularly as to the 2012 Walker Distribution. Friedman disregards both the Amended Complaint and the terms of the loans themselves when advancing this position. In Friedman's own words:

> Specifically, the ***2012 Second Lien Loan Agreement provided that on or after closing***, the Transferee Defendants would receive a "one-time cash Distribution," which would be made by "Borrowers to [United Sporting] (for further distribution to SportCo and Wellspring and the other shareholders of SportCo)."

[Doc. No. 58 ¶ 36, emphasis added.] The Amended Complaint states that the 2012 Loan was signed on September 28, 2012 and the Walker Distribution occurred "on or about" October 1, 2012. [Doc. No. 58, ¶¶ 35, 37.] However, there can be no dispute that the execution of the loan documents, together with the funding and distribution of the loan proceeds in accordance with the loan documents, constitute one transaction.

Friedman cannot deny, at least with credibility, that the disbursement from the 2012 Loan to Mr. Walker was part of the same transaction as the execution 2012 Loan itself. Moreover, Friedman provides no legal authority whereupon this court could conclude that South Carolina courts would consider Prospect an "existing" creditor under these facts. Friedman's omission of

---

[2] Prospect, which is a "Business Development Company" under the Section 2(a)(48) of the Investment Company Act of 1940, publicly reported the 2012 Loan as a recapitalization on its Form 10-K filed with the United States Securities and Exchange Commission following the 2012 Loan. [Doc. No. 91-6, p. 82.]

4

legal precedent is easily understood; South Carolina Supreme Court precedent makes it clear that it is ***notice of the transfer*** that serves as the basis for differentiating the claims available to "existing" and "subsequent" creditors, and Friedman cannot deny that Prospect had actual notice of the transfers before each occurred. *See* Walker, Evans & Cogswell v. Bollmann Bros., 22 S.C. 512, 527–28 (1885) ("It would seem, then, that where a deed or other instrument has been executed by one not in debt at the time and the deed is founded upon a sufficient consideration, it is invulnerable as to subsequent creditors with notice as well as to all others. Nor as a general rule can a voluntary conveyance, made under such circumstances, be avoided by subsequent creditors with notice.") *see also* Walker's progeny, e.g., Jackson v. Plyler, 17 S.E. 255, 256 (S.C. 1893) (reciting the rule of notice in Walker); Gentry v. Lanneau, 32 S.E. 523 (S.C. 1899) (same); In re Ducate, 369 B.R. 251, 260-61 (Bankr. D.S.C. 2007) (Duncan, J.) (reciting the rule in Walker and concluding that even constructive notice of a transfer is sufficient ground to bars a constructive fraud claim).

    Because the critical issue in determining whether a creditor may bring a constructive fraud claim is prior notice of the transfer to the creditor, there is no justification why this court should elevate form over substance by providing significance to Freidman's allegation that the proceeds from Prospect's leveraged recapitalization may have been disbursed to Mr. Walker a couple of days "after" the execution of the loan rather than "on" the date that the 2012 Loan was effectively signed. Therefore, Friedman has failed to plead sufficient facts whereby this court can conclude that he is standing in the shoes of an "existing" creditor - one lacking notice prior to becoming a creditor - for the purposes of attacking the 2012 Walker distribution as constructively fraudulent, and the Motion must be granted, at least as to the 2012 Walker Distribution.

> **B.    Friedman's entire fraudulent transfer claim against Mr. Walker is barred by Prospect's undisputed conduct in connection with the transfer, which amounts to participation, consent and ratification.**

Friedman's Response fails to demonstrate any caselaw in South Carolina permitting a lender/creditor to use the Statute of Elizabeth to renege on an investment and rake back a distribution from a shareholder when that lender mandated the transfer in the very loan whereby it became a creditor. Friedman dismisses all equitable principles and ignores the Motion's reference to Mitchell v. Pinckney, 13 S.C. 203, 212–13 (1880) (further citations omitted) (stating that if a party "becomes acquainted with the fraud before completing his bargain and chooses to go on, a court of equity will not help him."). Moreover, Friedman fails to identify any case in any jurisdiction where a lender who funded any type of debt financed distribution was later permitted to cop out of a bad investment by recharacterizing the distribution as a fraudulent conveyance.

In stark contrast, numerous persuasive authorities that demonstrate Prospect's mandating both Walker distributions leaves Friedman with no triggering creditor and bars his claims. *See* In re Dunn, No. ADV. SV-04-01343-KT, 2006 WL 6810930, at *8 (B.A.P. 9th Cir. Oct. 31, 2006) ("A creditor who ratifies or participates in a fraudulent transfer may be estopped from attacking the transfer."); Lane v. Eggleston, 284 F. 743, 745 (5th Cir. 1922) (stating that a creditor cannot "avoid [a transfer], after he has voluntarily assented to it"); In re Refco, Inc. Securities Litigation, No. 09–Civ–2885–GEL, 2009 WL 7242548, at *11 (S.D.N.Y. Nov. 13, 2009) (holding that that lender "cannot be the triggering creditor, because it was a material participant in the alleged fraudulent transaction ... [F]raudulent transfers [are] not voidable where the benefit would run to a creditor that ratified the transfer."); U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc., 479 B.R. 405, 410 (N.D. Tex. 2012) (holding that banks and bondholders who participated in an allegedly fraudulent transfer cannot bring claims themselves, and so cannot be the requisite triggering

6

creditor); In re Crescent Res. Litig Trust ex rel Bernstein v. Duke Energy Corp., 500 B.R. 464, 479-80 (W.D. Tx 2013) (concluding that, whether the defense is styled as consent, ratification, or estoppel, a lender who participates in a transaction and accepts the benefits of the transaction cannot challenge it later as fraudulent).

Instead of relying on any sound legal authority, Friedman relies instead on fallacious circular reasoning, contending that Prospect's claim under the Statute of Elizabeth cannot be barred by ratification because the Statute of Elizabeth "voids" fraudulent transfer. Under the plain text of the Statute of Elizabeth, a creditor must first prevail on a claim of fraudulent transfer before a transfer is "void." Friedman misconstrues dicta in one decision by this court in his only effort to justify this circular reasoning. (Response, p. 33) (citing In re Amtron, Inc., 192 B.R. 130, 132 (Bankr. D.S.C. 1995)).

Friedman contends, alternatively, that ratification or consent cannot bar his claims because Prospect did not "sanction" the "relevant conduct." (Response, pp. 34-35.) However, Friedman mistakenly defines the "relevant conduct." As discussed above, the South Carolina Supreme Court and this court have recognized that the "relevant conduct" for purpose of notice is the *transfer*, not any subsequent failure of a borrower to repay debt at some time in the future. Specifically, this court said that "it would be unjust" for a creditor to avoid a transfer, even one that is voluntary, as fraudulent "if the creditor knew or should have known of the transfer before the debt was incurred." In re Ducate, 369 B.R. at 260-61. Friedman is mistaken in his attempt to distinguish Ducate. [Response, p. 28.] The "key fact" is not the amount of time between the distribution and the extension of credit, but again, whether the creditor first had notice. Because Prospect not only had full notice of, but in fact consented to and mandated, both transfers to Mr. Walker, Friedman's claims against Mr. Walker must fail.

7

Finally, Friedman contends, alternatively, that the court is not able to consider ratification or similar affirmative defenses at this time. (Response p. 35). However, a defendant can raise a defense, even one that usually presents a question of fact for a jury, e.g. the statute of limitations, if that if the defense appears on the face of the complaint. Groves v. Daffin, No. CIV.A. 8:13-00019-JM, 2014 WL 897346, at *2 (D.S.C. Mar. 6, 2014) (quoting Richmond, Fredricksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir.1993)). This is true for the defense of ratification in fraudulent transfer cases as well. See In re Lyondell Chem. Co., 503 B.R. 348, 384–85 (Bankr. S.D.N.Y. 2014), as corrected (Jan. 16, 2014) and abrogated on other grounds, 818 F.3d 98 (2d Cir. 2016) (dismissing claims for fraudulent transfer due to ratification.) The bankruptcy court in Lyondell specifically noted:

> The Court has difficulty seeing how the Creditor Trust could plausibly be alleging that any LBO[3] Lender was ignorant of the fact that it was lending for the purpose of financing an LBO, and that LBO proceeds would then go to stockholders—especially since, as the Movants have pointed out in a different context (discussed in Section II above) the loan documents required loan proceeds to be used for that purpose.
>
> That is more than sufficient to establish the requisite participation and ratification, which in the context here, requires no more than that knowledge. While more nuanced knowledge might be necessary to establish ratification in other contexts, it is more than sufficient here for the LBO lenders to have known—as the documents themselves establish—that they were lending for the purposes of an LBO, and that the proceeds of their loans were going to stockholders.

For the same reasoning, Friedman cannot now state a claim against Mr. Walker while relying on Prospect as his triggering creditor, because the undisputed facts allow only the inference that Prospect intended and required that the Borrowers make both Walker Distributions from the loan proceeds. Friedman's claims fall outside of any coherent understanding of the purpose of South Carolina's Statute of Elizabeth, and so his claims must fail. See Windsor Properties, Inc. v. Dolphin

---

[3] "LBO" stands for "leveraged buy-out," another type of debt financed distribution.

Head Const. Co., 331 S.C. 466, 473, 498 S.E.2d 858, 861 (1998) ("Finally, we reject Linda's argument *because it contravenes the purpose of the Statute of Elizabeth, which aims to prevent persons from defrauding creditors* by transferring their assets to third-parties.") (emphasis added); *see also* Jackson v. Charleston County Sch. Dist., 447 S.E.2d 859, 861 (S.C. 1994) ("The primary rule of statutory construction is to ascertain and effectuate the intent of the legislature.")

### CONCLUSION

For the foregoing reasons, together with those stated in the Motion and argued by co-defendants in support of their motions to dismiss, Charles E. Walker, Jr. requests that the Court dismiss the First Amended Complaint against him entirely and with prejudice. Alternatively, Mr. Walker asks that the Amended Complaint be dismissed as to the 2012 Walker Distribution and as to Friedman's request for either attorneys' fees or punitive damages, neither of which Friedman attempts to justify as properly pled as to Mr. Walker. Finally, Mr. Walker asks that, upon the grant of this motion in whole or in part, that the order permit him to petition for an award of attorney's fees and costs under applicable statute and court rule.

        s/Shaun C. Blake
        Shaun C. Blake, Esq. (S.C. Fed. ID 10358)
        ROGERS LEWIS JACKSON MANN & QUINN, LLC
        1901 Main Street, Suite 1200
        Columbia, SC  29211
        Direct: (803) 978-1965
        Email: sblake@rogerslewis.com

April 22, 2020.        ATTORNEY FOR CHARLES E. WALKER, JR.