# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

|  |  |
|---|---|
| Ronald J. Friedman, as the trustee for the SportCo Creditors' Liquidation Trust,<br><br>                                    Plaintiff,<br><br>v.<br><br>Wellspring Capital Management, LLC, Wellspring Capital Partners IV, L.P., WCM Genpar IV, L.P., WCM Genpar IV GP, LLC, Alexander E. Carles, Bradley Johnson, F. Hewitt Grant, Charles E. Walker, Jr., Todd Boehly, Bernard Ziomek, and Andrew Kupchik,<br><br>                                    Defendants. | Adversary Proceeding No. 19-80071-DD<br><br><br>**ORDER GRANTING MOTIONS TO DISMISS ADVERSARY PROCEEDING** |

This matter is before the Court on motions to dismiss filed by the defendants Wellspring

Capital Management, LLC ("Wellspring Capital"), Wellspring Capital Partners IV, L.P.

("Wellspring Capital Partners"), WCM Genpar IV, L.P., WCM Genpar IV GP, LLC (collectively,

the "Wellspring Defendants") [Docket No. 91], F. Hewitt Grant [Docket No. 89], Charles E.

Walker, Jr. [Docket No. 90], Alexander E. Carles [Docket No. 91], Andrew Kupchik [Docket No.

92], Todd Boehly [Docket No. 93], and Bradley Johnson [Docket No. 85].[1]  The plaintiff, Ronald J.

---

[1] The defendants filed separate motions.  The defendants asserted common arguments in support of dismissal, but all arguments made in support of dismissal were not asserted by each defendant.  F. Hewitt Grant asserted the lack of a triggering creditor due to Prospect Capital Corporation's knowing participation in the transfers and failure to state a claim under New York law due to lack of insolvency and under South Carolina law due to failure to plead actual fraud. Charles E. Walker, Jr. argued in support of dismissal due to lack of a triggering creditor based on Prospect's secured status, failure to state a claim under New York law due to lack of insolvency, on equity grounds because Prospect failed to obtain a personal guaranty from Mr. Walker and because the distributions were specifically contemplated by the loan transaction, and due to failure to state a claim for fraudulent conveyance under South Carolina law.  Andrew Kupchik argued dismissal was necessary due to Prospect's ratification and/or consent to the distributions, due to failure to state a claim under New York law because of lack of insolvency and failure to state a claim under South Carolina law due to failure to plead actual fraud, due to the expiration of the statute of limitations on the fraudulent conveyance claims, and due to failure to plead the existence of a triggering unsecured creditor. The Wellspring Defendants asserted all of these arguments and also asserted failure to state a claim under section 550 against certain defendants.  Todd Boehly filed a joinder to the Wellspring Defendants' motion to dismiss.  Alexander Carles' and Bradley Johnson's arguments are limited to the negligent misrepresentation cause of action, the only cause of action asserted against them. The Court addresses in this order only those arguments that clearly mandate dismissal.  The defendants' remaining arguments need not be addressed.

Friedman, the trustee for the SportCo Creditors' Liquidation Trust, filed an omnibus response to the

motions to dismiss [Docket No. 112].  After the defendants filed replies, the Court held a hearing on

June 18, 2020.  At the conclusion of the hearing, the Court took the motions under advisement.  The

Court now issues this order, granting the motions to dismiss for the reasons set forth below.[2]

## BACKGROUND[3]

Ellett Brothers LLC ("Ellett"), a South Carolina limited liability company, was a sporting

goods distributor.  In 2008, Wellspring Capital, through its fund Wellspring Capital Partners,

acquired Ellett.  Wellspring Capital formed SportCo Holdings, Inc. ("SportCo") to serve as a

holding company for United Sporting Company, Inc. ("United Sporting"), Ellett's direct parent;

Ellett; and its subsidiaries.  Ellett achieved high sales and revenues and had significant operations

until sometime in 2016, when its profits began to decrease.  In June 2019, SportCo and its

subsidiaries[4] (the "Debtors") filed chapter 11 bankruptcy cases in the United States Bankruptcy

Court for the District of Delaware.

In 2012, the year that the amended complaint alleges Ellett "achieved record sales and

earned revenues of approximately $1.2 billion," Ellett and its operating subsidiaries (the

"Borrowers") entered into a Third Amended and Restated Loan and Security Agreement and a

Second Lien Loan and Security Agreement (collectively, the "Loan Agreements") with lenders

including Prospect Capital Corporation ("Prospect"), pursuant to which Prospect and the other

lenders loaned $280 million to the Borrowers.   Over $134 million of the loan proceeds were used to

---

[2] Defendant Bernard Ziomek is in default in this matter.  However, the Court has the discretion to sua sponte dismiss a
complaint pursuant to Fed. R. Civ. P. 12(b)(6).  *See Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 614
(Bankr. N.D.N.Y. 2010); *Saifullah v. Johnson*, 948 F.2d 1282, at *1 (4th Cir. 1991) (unpublished table decision).
Because the Court dismisses the complaint as to all other defendants, the Court sua sponte dismisses the causes of
action against Mr. Ziomek as well.
[3] These facts, as recited in the complaint, are taken as true for purposes of the motions to dismiss.  *See Francis v.
Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).
[4] The Debtors in the bankruptcy cases, pending in the District of Delaware, are SportCo Holdings, Inc.; Ellett Brothers,
LLC; United Sporting Company, Inc.; Bonitz Brothers, Inc.; Evans Sports, Inc.; Jerry's Sports, Inc.; Outdoor Sports
Headquarters, Inc.; Quality Boxes, Inc.; and Simmons Guns Specialties, Inc.

fund distributions to Wellspring Capital Partners, WCM GenPar IV, L.P., WCM GenPar IV GP, LLC, F. Hewitt Grant, Charles E. Walker, Jr., Todd Boehly, Bernard Ziomek, and Andrew Kupchik (collectively, the "Transferee Defendants").  On March 7, 2013, the Borrowers entered into a First Amendment to the Loan Agreements (the "First Amendment"), pursuant to which Prospect loaned the Borrowers an additional $60 million.  Ellett used $54,860,549.74 of the First Amendment loan proceeds to fund distributions to the Transferee Defendants.  A second amendment to the Loan Agreements (the "Second Amendment") was executed on September 30, 2014.

The Loan Agreements and the First and Second Amendments each contain a choice of law provision, providing that New York law applies.  The choice of law provision in the Loan Agreements states:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York; provided, however, that if any of the Collateral shall be located in any jurisdiction other than New York, the laws of such jurisdiction shall govern the method, manner and procedure for foreclosure of Agent's Lien upon such Collateral and the enforcement of Agent's other remedies in respect of such Collateral to the extent that the laws of such jurisdiction are different from or inconsistent with the laws of the State of New York. As part of the consideration for new value received, and regardless of any present or future domicile or principal place of business of Borrowers, any Lender or Agent, each Borrower hereby consents and agrees that the state courts for the State of New York, or, at Agent's option, the United States District Court for the Southern District of New York, shall have jurisdiction to hear and determine any claims or disputes among Borrowers, Agent and Lenders pertaining to this Agreement or to any matter arising out of or related to this Agreement. Each Borrower expressly submits and consents in advance to such jurisdiction in any action or suit commenced in any such Court, and each Borrower hereby waives any objection that such Borrower may have based upon lack of personal jurisdiction, improper venue or forum non conveniens and hereby consents to the granting of such legal or equitable relief as is deemed appropriate by such Court. Each Borrower hereby waives personal service of the summons, complaint and other process issued in any such action or suit and agrees that service of such summons, complaint and other process may be made by certified mail addressed to such Borrower at the address set forth in this Agreement and that service so made shall be deemed completed upon the earlier of such Borrower's actual receipt thereof or three (3) days after deposit in the U.S. mails, proper postage prepaid. Nothing in this Agreement shall be deemed or operate to affect the right of Agent to serve legal process in any other manner permitted by law, or to preclude the enforcement by Agent of any judgment or order obtained in such forum or the taking of any action under this Agreement to enforce same in any other appropriate forum or jurisdiction.

The choice of law provision contained in the First Amendment, executed March 7, 2013, states:

> Governing Law; Consent to Jurisdiction; WAIVER OF JURY TRIAL. This Agreement and the rights and obligations of the parties hereunder shall be governed by, and construed and interpreted in accordance with, the law of the State of New York. Sections 14.20 and 14.21 of the Loan Agreement are hereby incorporated by reference as if fully stated herein, *mutatis mutandis*. THE BORROWERS, THE AGENT AND THE LENDERS HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE EXTENT PERMITTED BY APPLICABLE LAW, TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT AND FOR ANY COUNTERCLAIM THEREIN.

The choice of law provision contained in the Second Amendment, executed September 30, 2014,

states:

> This Agreement shall be governed by, and construed in accordance with, the law of the State of New York and the validity, interpretation, construction, and performance hereof shall be governed by and construed and enforced in accordance with, and any claim by any party hereto against any other party hereto (including any claims sounding in contract or tort law arising out of the subject matter hereof and any determinations with respect to post-judgment interest) shall be determined in accordance with, the internal laws of the State of New York for contracts made and to be performed wholly within the State of New York (excluding the laws applicable to conflicts or choice of law that would require the application of the law of any other jurisdiction).

In October 2017, Wellspring Capital was contemplating a purchase of AcuSport, a competitor, by Ellett, for $14.8 million.  In connection with this contemplated purchase, Alexander Carles, a managing partner of Wellspring Capital and an officer and director of SportCo and its subsidiaries, and Bradley Johnson, the president and chief executive officer of SportCo and its subsidiaries, sought to convince Prospect to forbear from exercising any remedies in the event of a payment default.  Specifically, Mr. Carles and Mr. Johnson represented to Prospect that a purchase of AcuSport would result in: (1) Debtors' capturing 20 to 30 percent of AcuSport sales; (2) Acquisition of $14 million worth of AcuSport's inventory at a significant discount; and (3) Realization of an immediate $7 million profit from the sale of the inventory acquired in the

purchase.  From October 2017 to April 2018, Mr. Carles and Mr. Johnson sent numerous emails to representatives of Prospect, attempting to induce Prospect to agree to forego exercising its rights in the event of a default.  In April 2018, Prospect agreed to defer two quarters of cash interest payments.  It had previously received notification, in early 2018, that the Borrowers would default on their obligation under the Loan Agreements and the Amendments in the second quarter of 2018.  On December 31, 2018, the Borrowers defaulted on their obligations under the Loan Agreements and the Amendments.

An action with multiple causes of action was commenced by Prospect Capital Corporation in South Carolina state court and was removed to this court on September 6, 2019.  Mr. Friedman was substituted as the plaintiff on January 10, 2020.  Mr. Friedman filed an amended complaint the same day.  The amended complaint asserts three causes of action: (1) avoidance and recovery of fraudulent transfers by Ellett against the Transferee Defendants pursuant to 11 U.S.C. §§ 544 and 550 and S.C. Code § 27-23-10; (2) avoidance and recovery of fraudulent transfers by SportCo against the Transferee Defendants pursuant to 11 U.S.C. §§ 544 and 550 and S.C. Code § 27-23-10; and (3) negligent misrepresentations against Wellspring Capital, Mr. Carles, and Mr. Johnson.

## **LEGAL STANDARD**

The defendants' motions rely on Federal Rule of Civil Procedure 12(b)(6).  Federal Rule of Bankruptcy Procedure 7012(b) provides that Federal Rule of Civil Procedure 12(b) applies in adversary proceedings.  Fed. R. Civ. P. 12(b)(6) provides for dismissal of an action if the complaint "fail[s] to state a claim upon which relief can be granted."  "To survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'"  *Haynsworth Sinkler Boyd, P.A. v. Holmes (In re Holmes)*, 610 B.R. 541, 546 (Bankr. D.S.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The complaint must provide more than mere "labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The court must construe the allegations in the complaint in the light most favorable to the plaintiff.

*Id.* In considering whether to grant a motion to dismiss under Rule 12(b)(6), the court may take

judicial notice of matters of public record and may consider documents attached to the complaint

and the motion to dismiss, "so long as they are integral to the complaint and authentic." *Sec'y of*

*State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citations omitted).

"[F]or purposes of Rule 12(b)(6), '[the court is] not required to accept as true the legal conclusions

set forth in a plaintiff's complaint.'" *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244

(4th Cir. 1999)).

## ANALYSIS

### 1. First and Second Causes of Action

The plaintiff's first and second causes of action are based on 11 U.S.C. § 544(b). Section

544(b) states:

> Except as provided in paragraph (2) [not applicable here], the trustee may
> avoid any transfer of an interest of the debtor in property or any obligation
> incurred by the debtor that is voidable under applicable law by a creditor
> holding an unsecured claim that is allowable under section 502 of this title or
> that is not allowable only under section 502(e) of this title.

Thus, under § 544(b), the trustee has the rights of an unsecured creditor under "applicable law."

Most commonly, the applicable law on which a trustee relies is state law. *See The Finley Grp. v.*

*Working Media Grp. Atlanta, LLC (In re Redf Mktg., LLC)*, 536 B.R. 646, 667 (Bankr. W.D.N.C.

2015); *In re Ball*, 362 B.R. 711, 716 (Bankr. N.D. W. Va. 2007). Here, the plaintiff relies on S.C.

Code § 27-23-10, South Carolina's Statute of Elizabeth. That statute states:

> (A) Every gift, grant, alienation, bargain, transfer, and conveyance of lands,
> tenements, or hereditaments, goods and chattels or any of them, or of any lease,
> rent, commons, or other profit or charge out of the same, by writing or
> otherwise, and every bond, suit, judgment, and execution which may be had or
> made to or for any intent or purpose to delay, hinder, or defraud creditors and
> others of their just and lawful actions, suits, debts, accounts, damages,

6

penalties, and forfeitures must be deemed and taken (only as against that person or persons, his or their heirs, successors, executors, administrators and assigns, and every one of them whose actions, suits, debts, accounts, damages, penalties, and forfeitures by guileful, covinous, or fraudulent devices and practices are, must, or might be in any ways disturbed, hindered, delayed, or defrauded) to be clearly and utterly void, frustrate and of no effect, any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.

(B) A showing of two or more of the following creates a rebuttable presumption that a child support debtor intended to transfer income or property to avoid payment to a child support creditor:
(1) a close relationship between the transferor and transferee;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was not disclosed or was concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was substantially all of the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or after a substantial debt was incurred; and
(11) there was a departure from the usual method of business.

S.C. Code § 27-23-10 (1976).

The defendants' motions assert numerous arguments in support of the assertion that the Court must dismiss the plaintiff's causes of action. The parties disagree on what law should apply—federal or state, and further if state law applies, New York or South Carolina. The defendants argue that New York law should apply, first, because the Loan Agreements and the First and Second Amendments contain choice of law provisions stating that New York law will apply and second, because South Carolina choice of law analysis dictates that New York law should apply.

The plaintiff, however, asserts that federal conflict of law principles should govern what state's law applies in this case, because "[a] claim under § 544(b) incorporates 'applicable law,' but it is a claim under federal law with a substantive federal law recovery scheme."  In support of this argument, the plaintiff cites a case from the United States District court for the District of Idaho, which was affirmed by the Ninth Circuit, as well as a case from the United States Bankruptcy Court for the Southern District of Texas, in which the court stated that § 544(b) claims are unique "because they exist only to the extent of applicable state law," but then found, "Even so, such claims are not pendant state claims in federal bankruptcy cases, but are federal causes of action rooted in federal bankruptcy law and policy." *Tow v. Rafizadeh (In re Cyrus II P'ship)*, 413 B.R. 609, 614 (Bankr. S.D. Tex. 2008) (citing *Southmark Corp. v. Crescent Heights VI, Inc. (In re Southmark Corp.)*, 95 F.3d 53, 53, n.7 (5th Cir. 1996)).  In *Cyrus II*, the court also acknowledged that the Fourth Circuit has found otherwise and determined that state choice of law rules should be used in bankruptcy cases.  *Id.* at 613-14.

As discussed in *Cyrus II*, the Fourth Circuit has stated that a bankruptcy court should apply the choice of law rules of the state in which it sits.  *In re Merritt Dredging Co., Inc.*, 839 F.2d 203, 205 (4th Cir. 1988) (adopting rule from *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941) stating that a federal court sitting in diversity should apply the choice of law rules of the state in which it sits).  The issue in *Merritt Dredging* was the sale of a barge and the priority of parties' interests in the proceeds of the sale.  In considering what choice of law provisions to apply, the Fourth Circuit stated:

> The question of what choice of law rules should be applied by a bankruptcy court presents another wrinkle. Although bankruptcy cases involve federal statutes and federal questions, a bankruptcy court may, as here, face situations in which the applicable federal law incorporates matters which are the subject of state law. It is clear that a federal court in such cases must apply state law to the underlying substantive state law questions. Whether a court in such a situation must apply the conflicts rule of the forum state in determining *which* state's law to apply or may choose the applicable state law as a matter of independent federal judgment, however,

8

has remained an open question. We believe, however, that in the absence of a compelling federal interest which dictates otherwise, the *Klaxon* rule should prevail where a federal bankruptcy court seeks to determine the extent of a debtor's property interest.

The argument for applying the *Klaxon* rule to state law questions arising in bankruptcy cases is compelling. A uniform rule under which federal bankruptcy courts apply their forum states' choice of law principles will enhance predictability in an area where predictability is critical. Most important, such a rule would accord with the model established by *Erie* and *Klaxon*. Both those cases make clear that federal law may not be applied to questions which arise in federal court but whose determination is not a matter of federal law: "[e]xcept in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State." Such is the case with questions regarding the extent of a bankruptcy debtor's property interests. "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." It would be anomalous to have the same property interest governed by the laws of one state in federal diversity proceedings and by the laws of another state where a federal court is sitting in bankruptcy. Because no overwhelming federal policy requires us to formulate a choice of law rule as a matter of independent federal judgment, we adopt the choice of law rule of the forum state, South Carolina.

*Merritt Dredging*, 839 F.2d at 205-06. The Fourth Circuit's opinion makes clear that in cases where a bankruptcy court considers state law questions, it should apply the choice of law rules of the forum state. While *Merritt Dredging* specifically considers situations in which the court is making a determination about state law property interests, the reasoning extends also to actions brought under sections of the Bankruptcy Code when those sections require examination of state law, as does section 544(b). Section 544(b) claims rely exclusively on state law; thus, section 544(b) causes of action fall squarely within the reasoning of the Fourth Circuit in *Merritt Dredging*.[5] The plaintiff's argument that the Court should apply federal choice of law principles here is unavailing.

---

[5] The Court notes that there is a specific fraudulent conveyance section of the Bankruptcy Code. Under certain conditions, section 548 allows the avoidance of a transfer made within two years of the date of the filing of the bankruptcy petition. While property interests are defined by state law in the absence of a compelling federal interest, the Court would look to the Bankruptcy Code in making a determination of whether property is property of the estate under section 541. Similarly, *Merritt Dredging* suggests that federal law would apply to a section 548 cause of action, but that state law should apply to fraudulent conveyance claims based on state law. The Court further notes that here, section 548 is not available to the plaintiff due to the timing of the transfers and the bankruptcy filings.

With respect to which state's law applies, the defendants argue that the elements required to find that a party is a third party beneficiary are all met in this case and therefore New York law, as specified in the Loan Agreement's and Amendments' choice of law provisions, should apply to the plaintiff's causes of action against them.  The defendants argue that in the event the Court finds the choice of law provision does not apply, South Carolina choice of law principles should be consulted to reach a finding that New York law applies.  The plaintiff responds that the express terms of the choice of law provisions provide that the clause applies only to the parties to the Loan Agreements and the Amendments and that the defendants' indirect connection to the parties to the agreements, and the nature of their received benefit, a distribution, are not sufficient to render them third-party beneficiaries of the Loan Agreements and the Amendments.  Additionally, the plaintiff argues that the third element of New York's third-party beneficiary test is not met because there is no express intent in the Loan Agreements or the Amendments to compensate the defendants in the event the distributions were not paid and in fact, the Loan Agreement indicates the opposite by virtue of the inurement clause found in Section 13.1.  Finally, although the plaintiff asserts that federal conflict of law principles should apply, he argues that even under South Carolina conflict of law rules, South Carolina law should apply.

New York law regarding third party beneficiaries provides:

> It is ancient law in New York that to succeed on a third party beneficiary theory, a non-party must be the intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed.  A party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.

*Lightsey v. Toshiba Corp.*, 2019 WL 5872168, at *3 (D.S.C. Mar. 4, 2019) (quoting *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006)).  "Under New York law, only an intended beneficiary of a contract may assert a claim as a third-party beneficiary.  A third party is an

intended beneficiary where either (1) 'no one other than the third party can recover if the promisor breaches the contract' or (2) 'the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party.'" *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 162 (S.D.N.Y. 1998) (internal citations omitted).

With respect to South Carolina's choice of law analysis, South Carolina conflict of law principles provide that "the substantive law governing a tort action is determined by the state in which the injury occurred." *Lister v. NationsBank of Delaware, N.A.*, 329 S.C. 133, 143 (Ct. App. 1997) (citing *Bannister v. Hertz Corp.*, 316 S.C. 513 (Ct. App. 1994)). However, whether a fraudulent conveyance action is characterized as a tort action is unsettled. *See Sheehan v. Saoud*, 650 Fed. App'x 143 (4th Cir. 2016) (citing numerous cases, recognizing disagreement among courts regarding whether fraudulent conveyance action is a tort action); *MainStreet Bank v. Nat'l Excavating Corp.*, 791 F. Supp. 2d 520, 529 n.14 (E.D. Va. June 8, 2011) (acknowledging that Maryland law is not clear regarding whether  a fraudulent conveyance action sounds in tort, but concluding that "given that the gravamen of the fraudulent conveyance claim is the wrongfulness of the conveyance and the injury to the creditor, rather than balancing equities or fairness, it is appropriate to conclude that fraudulent conveyance claims sound in tort."); *Terry v. Walker*, 2006 WL 736861, at *5 (W.D. Va. Mar. 23, 2006) (stating that some courts characterize fraudulent conveyance actions as tort actions, while others characterize them as matters in equity). The United States District Court for the District of South Carolina found in a fraudulent conveyance case, relying on *Terry v. Walker*, that South Carolina conflict of law rules should apply to determine the applicable substantive law. *Ashmore for Wilson v. Dodds*, 262 F. Supp. 3d 341, 357 (D.S.C. July 5, 2017).

In *Ashmore for Wilson*, the District Court considered the question of how a fraudulent conveyance claim should be characterized for conflict of law purposes. The District Court stated

that "[w]hether a fraudulent conveyance claim should be characterized as a tort action is uncertain and disputed among American jurisdictions." *Id.* at 358. The District Court discussed the South Carolina Supreme Court's decision in *Sheldon v. Blauvelt*, 29 S.C. 453 (1888). In *Sheldon*, the defendant, a New York citizen, assigned some personal property to Mr. Dickinson. The assignment was executed in New York, but the personal property was located in South Carolina at the time the assignment was executed. New York law and South Carolina law differed as to whether such a transfer was permitted. The South Carolina Supreme Court stated that New York law would govern the validity of the transfer before it, unless applying New York law would result in a violation of South Carolina public policy. The District Court in *Ashmore for Wilson* stated:

> *Sheldon*, despite its age, is still the law of South Carolina that appears to govern choice of law for fraudulent conveyance and preferential assignment claims, and this court must follow its ruling. Nevertheless, eliciting a straightforward choice of law rule applicable to similar cases has proved difficult. There are three interpretations of *Sheldon*'s holding that can be distilled from subsequent case law and secondary sources. First, some authorities interpret *Sheldon*'s choice of law rule to turn on where the assignment transferring the personal property is executed, and thus conclude that South Carolina would apply the law of state where such assignment was executed. Other authorities seem to interpret *Sheldon*'s choice of law rule to direct the application of the law of the state where the assignor or transferor is domiciled. Still other authorities interpret *Sheldon* as applying the law of the *situs* of the personal property. Of course, all of the authorities agree that, whatever general choice of law principle should be drawn from *Sheldon*, it remains subject to the traditional exception applying South Carolina law where following the law of a foreign forum would be repugnant to South Carolina public policy. Though there may be a good deal of uncertainty as to the precise choice of law principle to be drawn from *Sheldon*, it seems clear that *Sheldon* does not adopt the view of the parties that a fraudulent transfer claim is essentially a tort and that the law to be applied is the law of the state where the harm occurs. Under *Sheldon*, *lex loci delicti* does not apply to fraudulent transfers.

> Although the court's review of *Sheldon* helps clarify what choice of law rule should not be applied here, it does not directly answer which law—South Carolina's or Florida's—should apply to the instant fraudulent conveyance claim. The court notes in this regard that, unlike in *Sheldon*, the transferor in the instant action (AB & C) was domiciled in South Carolina at the time of the transfers. The court also notes that, although it appears undisputed that all transfers from AB & C to Defendant were completed in Florida when Defendant deposited or cashed checks he received from AB & C there, it is not clear whether the completion of a transfer is equivalent to an execution of an assignment for purposes of deciding choice of law issues for a fraudulent conveyance claim, and for similar reasons it is not clear where the assets

12

were located at the time of transfer. The differences between the facts in *Sheldon* and
the facts of this case, therefore, may require here a choice of law ruling different from
that in *Sheldon*. In any event, because *Sheldon* only clearly applies when the transferor
is domiciled outside South Carolina and transfers personal property by an assignment
executed outside of South Carolina, *Sheldon* does not appear to control here.

*Id.* at 360-61.  The court ultimately determined that it should certify the question of which

jurisdiction's law applied to the fraudulent conveyance claim to the South Carolina Supreme Court.

*Id.* at 361.  However, the case was ultimately dismissed before the South Carolina Supreme Court

answered the question.

The parties' arguments regarding what law applies to the plaintiff's fraudulent conveyance

claims present some complicated and novel questions; however, it is not necessary for the Court to

decide whether the defendants are third party beneficiaries of the Loan Agreements or the

Amendments.  Nor is it necessary for the Court to decide whether New York or South Carolina law

applies under South Carolina's choice of law principles.  For the reasons set forth below, under the

law of either state, the plaintiff's first and second causes of action must be dismissed.

The plaintiff's first and second causes of action both assert claims for fraudulent

conveyances pursuant to § 544(b) and S.C. Code § 27-23-10.  It is notable that the first and second

causes of action are based only on South Carolina law; however, because the parties disagree as to

whether South Carolina or New York law should apply, the Court will analyze the first and second

causes of action under both.

New York law prohibits both actual and constructive fraudulent conveyances.  An actual

fraudulent conveyance is any "conveyance made . . . with actual intent . . . to hinder, delay, or

defraud either present or future creditors."  *Innovative Custom Brands, Inc. v. Minor*, 2016 WL

308805, at *2 (S.D.N.Y. Jan. 25, 2016) (alteration original).  A constructive fraudulent conveyance

exists under New York law if the conveyance was made without fair consideration and "(1) the

transferor is insolvent or will be rendered insolvent by the transfer in question; (2) the transferor is

13

engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital; or (3) the transferor believes that it will incur debt beyond its ability to pay." *Id.* at *3 (quoting *In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005)).

South Carolina law provides:

> For existing creditors, conveyances can be set aside in two instances: First, where the challenged transfer was made for a valuable consideration, it will be set aside if the plaintiff establishes that (1) the transfer was made by the grantor with the actual intent of defrauding his creditors; (2) the grantor was indebted at the time of the transfer; and (3) the grantor's intent is imputable to the grantee. Second, where the transfer was not made on a valuable consideration, no actual intent to hinder or delay creditors must be proven. Instead, as a matter of equity, the transfer will be set aside if the plaintiff shows that (1) the grantor was indebted to him at the time of the transfer; (2) the conveyance was voluntary; and (3) the grantor failed to retain sufficient property to pay the indebtedness to the plaintiff in full—*not merely at the time of the transfer, but in the final analysis when the creditor seeks to collect his debt.*

*Hovis v. Ducate (In re Ducate)*, 369 B.R. 251, 258 (Bankr. D.S.C. 2007) (quoting *Mathis v. Burton*, 319 S.C. 261 (Ct. App. 1995)) (emphasis added).  *See also McDonald v. Nixon Energy Sols.*, 2017 WL 1836937, at *4 (D.S.C. May 8, 2017) (citing *Durham v. Blackard*, 438 S.E.2d 259, 262 (S.C. Ct. App. 1993)) ("However, where a transfer was not made on valuable consideration, the party bringing the fraudulent conveyance claim does not have to prove actual intent to hinder or delay the creditor; instead, the transfer will be set aside upon a showing that (1) the grantor was indebted to plaintiff at the time of the transfer; (3) it was a voluntary conveyance; and (3) the grantor did not retain sufficient property to pay the debt in full–not only at the time of the transfer but when the creditor seeks to collect upon the debt.").  For subsequent creditors, a conveyance may be set aside if it was voluntary (without consideration) and was made "with a view to future indebtedness or with an actual fraudulent intent on the part of the grantor to defraud creditors."  *Campbell v. Deans (In re J.R. Deans Co., Inc.)*, 249 B.R. 121, 130 (Bankr. D.S.C. 2000) (quoting *Mathis v. Burton*, 460 S.E.2d at 408).

For purposes of South Carolina law, the parties disagree whether Prospect was a preexisting creditor or a subsequent creditor.  The defendants argue that Prospect is a subsequent creditor, because it had knowledge of and approved of the distributions prior to them being completed.  As a result, the defendants argue, it would be unjust for Prospect to now be able to avoid the distributions.  The defendants argue that as a subsequent creditor, Prospect is required to plead actual fraud, and the amended complaint fails to do so.  The plaintiff responds that Prospect is a preexisting creditor because the distributions were not made until after Prospect became a creditor when the Loan Agreements and the Amendments were signed.  Therefore, the plaintiff argues that he is only required to establish constructive fraud.

The Court does not have to decide whether Prospect is a preexisting or a subsequent creditor.  The plaintiff does not dispute that the amended complaint does not plead actual fraud, and it clearly does not.  Therefore, a finding that Prospect is a subsequent creditor would require dismissal of the first and second causes of action.  A finding that Prospect is a preexisting creditor compels the same result.

While New York law and South Carolina law have slightly different tests for avoiding constructive fraudulent conveyances, there exists a common thread which is not satisfied here—insolvency at the time of the transfer.  The amended complaint contains no allegations that either Ellett, with respect to the first cause of action, or SportCo, with respect to the second cause of action, was insolvent at the time of the distributions or became, at the time of the transfers, insolvent as a result of the transfers.  In fact, the amended complaint states that the distributions at issue here were made in October 2012 and March 2013.  [Amended Complaint, ¶ 37, 40].  The amended complaint further states that from October 2012 to October 2013, "Ellett achieved record sales and earned revenues of approximately $1.2 billion."  [Amended Complaint, ¶ 31].  The amended complaint further states, "As recently as 2015, Ellett was the fifth largest private company

in South Carolina and the largest distributor of firearms in the United States, with annual revenues of $750 million, over 350 employees nationwide, and 175 employees in South Carolina." [Amended Complaint, ¶ 32]. The amended complaint does not allege that either Ellett or SportCo was insolvent at the time of the transfer or became insolvent as a result of the transfer.[6] The plaintiff relies on the fact that Ellett was unable to pay the debt owed to Prospect at the time that it had to be paid in full; however, this is not the only relevant point in time. New York law requires insolvency at the time of the transfer, and South Carolina law requires insolvency both at the time of the transfer, and at the time the creditor seeks to collect the debt. The amended complaint fails to allege insolvency at the time of the transfer, an essential element of a fraudulent conveyance claim under either New York or South Carolina law, and therefore fails to state a claim under § 544(b). The first and second causes of action are dismissed.

## 2.  <u>Third Cause of Action</u>

The plaintiff's third cause of action, for negligent misrepresentation against defendants Wellspring Capital, Mr. Carles, and Mr. Johnson, must also be dismissed. The third cause of action asserts that those parties "made numerous representations to Prospect concerning the AcuSport Purchase, including that the purchase would allow the Debtors to acquire $14 million worth of AcuSport inventory at a substantial discount; that it would result in the Debtors' immediate realization of a $7 million profit on the sale of the AcuSport inventory so purchased; and that it would result in the Debtors' capturing 20% to 30% of AcuSport sales." [Amended Complaint, ¶ 93]. The defendants argue that this cause of action must be dismissed because the alleged misrepresentations were forward-looking statements and opinions; therefore, they are not actionable

---

[6] There are different definitions of insolvency. The Uniform Commercial Code defines insolvency as the inability to pay debts in the ordinary course or when they come due, while the Bankruptcy Code defines insolvency as debts exceeding assets. *Marlow v. Oakland Gin Co. (In re The Julien Co.)*, 128 B.R. 987, 999-1000 (Bankr. W.D. Tenn. 1991); 11 U.S.C. § 101 (32). There are no allegations in the amended complaint that the debtors' liabilities exceeded their assets at the time of the transfers. There are also no allegations concerning expenses.

and cannot form the basis for a negligent misrepresentation cause of action. The plaintiff responds

that the statements relate to presently existing facts and that opinions are actionable in a negligence

context.

The parties are in agreement that New York and South Carolina law regarding negligent

misrepresentations are substantially similar and that as a result, the Court is not required to engage

in a choice of law analysis as to the third cause of action. The elements of a negligent

misrepresentation claim under New York law are:

> (1) the defendant had a duty, as a result of a special relationship, to give correct
>     information;
> (2) the defendant made a false representation that he or she should have known was
>     incorrect;
> (3) the information supplied in the representation was known by the defendant to be
>     desired by the plaintiff for a serious purpose;
> (4) the plaintiff intended to rely and act upon it; and
> (5) the plaintiff reasonably relied on it to his or her detriment.

*Hydro Invs., Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). New York courts have

stated, as plaintiff argues, that opinions can be actionable in a negligence context. However, the

circumstances in which this is true appear to be narrow. The plaintiff cites several cases in support

of his argument that his negligent misrepresentation cause of action should survive, relying

primarily on *Kimmell v. Schaefer*, 89 N.Y.2d 257 (1996). In *Kimmell*, the defendant, the chief

financial officer and chairman of the board of a company involved in several heat and electricity

projects, sought investors for one of its projects. *Id.* at 260-61. The defendant obtained projections

of anticipated returns on investments prepared by the company's employees and provided them to

potential investors. *Id.* at 261. He also advised the investors that the project was a good

investment, ultimately convincing them to invest in the project. *Id.* The projections that the

defendant provided to investors failed to include changes in utility rates that became effective just

prior to the creation of the projections. *Id.* at 261-62. The change in utility rates rendered the

projections inaccurate and resulted in the project being unlikely to generate any return for investors.

17

*Id.* at 262.  After the company filed for bankruptcy, the plaintiff investors commenced an action against the defendant for negligent misrepresentation based on his representations that the project was a good investment and the projections he provided to the plaintiffs.  *Id.* at 262.  The court examined whether a special relationship existed between the plaintiffs and the defendant sufficient to give rise to a claim for negligent misrepresentation.  *Id.* at 263-64.  The court stated:

> In the commercial context, a duty to speak with care exists when "the relationship of the parties, arising out of contract or otherwise, [is] such that in morals and good conscience the one has the right to rely upon the other for information."  This reliance must be justifiable, as a "casual response given informally does not stand on the same legal footing as a deliberate representation for purposes of determining whether an action in negligence has been established."

> Since a vast majority of commercial transactions are comprised of such "casual" statements and contacts, we have recognized that not all representations made by a seller of goods or provider of services will give rise to a duty to speak with care. Rather, liability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified. Professionals, such as lawyers and engineers, by virtue of their training and expertise, may have special relationships of confidence and trust with their clients, and in certain situations we have imposed liability for negligent misrepresentation when they have failed to speak with care.

*Id.* at 263-64 (internal citations omitted).  The court ultimately found that the defendant, based on his position as CFO and chairman of the board and on his experience owed a duty of care to the plaintiffs, such that he could be held liable for negligent misrepresentation.  *Id.* at 264-266.

The plaintiff also cites *King County, Washington v. IKB Deutsche Industriebank*, 863 F. Supp. 2d 317 (S.D.N.Y. 2012) and *West Side Fed. Sav. & Loan Ass'n v. Hirschfeld*, 476 N.Y.S.2d 292 (N.Y. App. Div. 1984) for the proposition that under New York law, opinions are actionable in a negligence context.  In *King County*, the court considered suits by investors seeking to recover losses incurred after the collapse of a structured investment vehicle.  *King County*, 863 F. Supp.2d at 318.  The court considered whether inaccurate credit ratings can form the basis for a negligent misrepresentation claim.  *Id.* at 321.  The court stated:

New York courts have repeatedly held that statements of opinion may form the basis of negligent misrepresentation claims. In *Credit Alliance Corp. v. Arthur Andersen & Co.,* the New York Court of Appeals upheld negligent misrepresentation claims against an auditing firm based on its "professional opinions." Similarly, in *Kimmell v. Schaefer*—one of the seminal cases interpreting New York negligent misrepresentation law—the New York Court of Appeals upheld negligent misrepresentation claims based on projections as to a utility project's expected return. As the Appellate Division's ruling in *Kimmell* explained, "where one party does have superior knowledge, the expression of an opinion implies that the declarant knows facts which support that opinion and that he knows nothing which contradicts the statement." Thus, New York courts have repeatedly held that opinions are actionable in a negligence context.

*CBS* and *Fait* cannot overturn these precedents. Although I previously recognized that "the elements of common-law fraud in New York are 'substantially identical to those governing § 10(b),' " and that therefore, " 'the identical analysis applies,' " negligent misrepresentation is a distinct cause of action, with different elements than common-law fraud. Thus, a change in the Second Circuit's interpretation of section 10(b) does not necessarily indicate a corresponding change in the Second Circuit's analysis of negligent misrepresentation claims under New York law. While *Fait* and *CBS* do seem to represent a trend in the Second Circuit, unless and until the Second Circuit explicitly rules that a New York state law negligent misrepresentation claim cannot be based on an opinion under any circumstances, this Court must follow established state law—particularly when issued by the highest court of the state. If, and when, the Second Circuit explicitly rules that a New York state law claim for negligent misrepresentation may never be based on an opinion, then plaintiffs' claim here must be dismissed. Until that time, however, defendants have not met the standard for reconsideration of this Court's opinion.

*Id.* at 322 (internal citations omitted).  While the court in *King County* clearly stated that statements of opinion can form the basis of negligent misrepresentation claims, the cases on which it relies all involve situations in which the party that allegedly engaged in a negligent misrepresentation was in some special position of expertise, such as an accountant.[7]  Further, as the defendants point out, the alleged negligent misrepresentations in *King County* actually involved inaccurate credit ratings based on outdated information—statements of presently existing fact.  *King County, Wash. v. IKB Deustche Industriebank AG*, 863 F. Supp. 2d 291, 296 (S.D.N.Y. 2012).  Further, the rating

---

[7] *See Credit Alliance Corp. v. Arthur Anderson & Co.*, 65 N.Y.2d 536 (NY App. 1985).

agencies generating the credit ratings had access to confidential information and possessed knowledge unavailable to the public. *Id.*

Finally, in *West Side Fed. Sav. & Loan Ass'n of New York City*, the plaintiff loaned funds to the defendant, secured by a mortgage on a parking garage. The defendant represented to the plaintiff, and to an appraiser who performed an appraisal of the garage, that the parking garage had 500 parking spaces. *Id.* at 382. However, the garage actually had only 402 parking spaces. *Id.* at 382. The court considered whether the plaintiff had proved the tort of innocent misrepresentation. *Id.* at 385. The court addressed the dissent's finding, that the defendant's determination of the number of parking spaces was a matter of judgment or opinion and was therefore unactionable. *Id.* at 385. The court stated that expressions of opinion are actionable under New York law, but further stated:

> *Magnaleasing, Inc. v. Staten Island Mall* (428 F. Supp. 1039, aff'd 563 F.2d 567) draws the distinction between expressions of opinion that are actionable and those that are not: "Mere predictions, however, may not form the basis for an action for fraud when both parties have equal access to the facts, or when it is obvious that the declarant is using a subjective standard. In these situations, reliance on the opinions is deemed unreasonable. However, where one party does have superior knowledge, the expression of an opinion implies that the declarant knows facts which support that opinion and that he knows nothing which contradicts the statement". If Hirschfeld's representation be deemed an opinion, his superior knowledge of parking garages in general and this parking garage in particular clearly implied that he was privy to facts that would support his statement.

*Id.* at 385-86 (internal citations omitted).

New York courts have also stated that statements of "mere puffery", or "statements founded entirely on speculation concerning future profits from proposed business endeavors" are not actionable. *See Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 506 (S.D.N.Y. 2018) (distinguishing cases where the courts dismissed negligent misrepresentation claims based on "puffery" or founded solely on speculative statements regarding future profits as a result of proposed transactions, and finding that the misrepresentations at issue were actionable because they

involved present facts).  To summarize New York law, then, it appears that opinions can be

actionable, but are not always actionable.  Instead, they may form the basis for a negligent

misrepresentation claim if the party making the misrepresentation possesses some special expertise

(by way of his job title or position, for example), or has some special knowledge about the

particular fact that is allegedly misrepresented.  Further, if the statement is solely a speculative

prediction about some potential business venture or course of action being contemplated, it is not

actionable.

The elements of a negligent misrepresentation claim under South Carolina law are as

follows:

> (1) the defendant made a false representation to the plaintiff; (2) the defendant had
> a pecuniary interest in making the statement; (3) the defendant owed a duty of care
> to see that he communicated truthful information to the plaintiff; (4) the defendant
> breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied
> on the representation; and (6) the plaintiff suffered a pecuniary loss as the
> proximate result of his reliance on the representation.

*Quail Hill, LLC v. Cnty. of Richland*, 387 S.C. 223, 240 (2010) (quoting *West v. Gladney*, 341 S.C.

127, 134 (Ct. App. 2000)).  South Carolina law is stricter regarding the actionability of opinions.

"The general rule under South Carolina common law is that in order to be actionable as a negligent

misrepresentation, the false representation must relate to a present or preexisting fact that is false

when made.  The corollary of this general rule is that the representation at issue cannot ordinarily be

based on unfulfilled promises or statements as to future events."  *Priv. Mortg. Inv. Servs., Inc. v.

Hotel and Club Assocs., Inc.*, 296 F.3d 308, 312-13 (4th Cir. 2002) (internal citations omitted);

*Beneficial Fin. I, Inc. v. Windham*, 2020 WL 4495436, at *7 (S.C. Ct. App. Aug. 5, 2020).  After

stating this general rule, the Court in *Private Mortgage Investment Service* considered whether,

under South Carolina common law, an exception exists if the negligent misrepresentation "is in the

nature of a professional opinion, given by a person who intends it for the guidance of others, and a

third party detrimentally relies upon it."  *Id.* at 313.  The court ultimately found that it believed the

21

South Carolina Supreme Court would "hold a professional appraiser liable to a third party for negligent misrepresentation under South Carolina common law in the event the third party detrimentally relied upon the professional appraiser's materially inaccurate and negligent appraisal of the 'as is' market value of a parcel of real property." *Id.* at 315. Accordingly, this case only established a narrow exception to the general rule, based on the Fourth Circuit's projection of how the South Carolina Supreme Court would rule. Other South Carolina cases have reiterated that opinions regarding future events cannot form the basis of a negligent misrepresentation claim. *See CNH Indus. Cap. Am., LLC v. Able Contracting, Inc.*, 2017 WL 4358706, at *5 (D.S.C. Sept. 29, 2017) (stating that fraud action could not be based on opinions about future performance of equipment ultimately purchased by the plaintiff); *Koontz v. Thomas*, 333 S.C. 702, 713-14 (Ct. App. 1999) (finding that architectural firm could not be liable for negligent misrepresentations to potential client for alleged statements regarding the price and timing of the proposed project because all of the alleged representations related to future events, not existing facts); *Sauner v. Pub. Serv. Auth. of South Carolina*, 354 S.C. 397, 408 (2003) ("Representations based on statements as to future events or unfulfilled promises are not usually actionable.").

Turning now to the present case, the third cause of action must be dismissed under either New York or South Carolina law because the statements that the plaintiff asserts constituted negligent misrepresentations were all statements regarding potential outcomes of a potential business endeavor; thus, they relate to future events and cannot form the basis of a negligent misrepresentation claim. Wellspring Capital, through defendants Mr. Carles and Mr. Johnson, allegedly represented to Prospect that: (1) Ellett could purchase assets of AcuSport for $14.8 million; (2) the purchase would result in the Debtors' capturing 20% to 30% of AcuSport sales; (3) the Debtors could acquire $14 million of AcuSport inventory at a substantial discount; and (4) Ellett would immediately realize a $7 million profit on the sale of the inventory acquired in the purchase.

These all relate to a proposed business transaction—the purchase by Ellett of AcuSport. They were not statements of presently existing fact. Wellspring Capital, Mr. Carles, and Mr. Johnson were not insiders of AcuSport, and the amended complaint does not allege that they had any special knowledge or information about AcuSport that was not available to the public. Prospect is a sophisticated party and, to the extent that it wanted to confirm the predictions made by Mr. Carles and Mr. Johnson were in fact accurate, it could have exercised due diligence. The alleged statements simply do not constitute actionable statements that can form the basis of a negligent misrepresentation claim.

The amended complaint also details numerous emails sent by Mr. Carles and Mr. Johnson to a representative of Prospect, urging Prospect to defer its right to payment in the event of a default. The emails, often using colorful language and harassing tones, essentially represent to Prospect that if the AcuSport transaction is not completed, Prospect will not get paid on its obligations. Later emails berate Prospect's representative for failing to agree to the AcuSport purchase more quickly. These emails can hardly be considered negligent misrepresentations. Most of them do not even contain any concrete information about the proposed AcuSport purchase or the likelihood of the Borrowers' default. For example, the October 27, 2017 email stated, "The only way to optimize is to merge with Acusport." [Amended Complaint, ¶ 49]. The December 26, 2017 email stated, "So you will waive [your interest payments]. Otherwise you cannot get paid." [Amended Complaint, ¶ 51]. The February 20, 2018 stated, "You're [sic] economics are going down and the risk of chapter is going up. Sounds like a tidy deal at year end [2017] made a lot of sense." [Amended Complaint, ¶ 54]. Another email stated, in part: "Gotta get your interest? The company will explode Rich!" [Amended Complaint, ¶ 57]. These emails may be a lot of things, but negligent misrepresentations

23

they are not.  They are simply not statements of preexisting fact that were false when made.[8]  They are not actionable.

Under either New York or South Carolina law, the plaintiff's third cause of action for negligent misrepresentation fails to state a claim for which relief can be granted.

<strong><u>CONCLUSION</u></strong>

For the reasons set forth above, the first, second, and third causes of action set forth in the plaintiff's amended complaint fail to state claims for which relief can be granted.  The defendants' motions to dismiss are granted.  The amended complaint is dismissed.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**08/27/2020**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 08/27/2020

---

[8] The Court also notes that, setting the other factors aside, given the extreme nature of the urgent tone of these emails, and the highly sophisticated status of Prospect, Prospect satisfying the justifiable reliance element of a negligent misrepresentation claim is questionable, at best.