UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Ronald J. Friedman, as the trustee for the SportCo Creditors' Liquidation Trust,<br><br>Plaintiff,<br><br>v.<br><br>Wellspring Capital Management, LLC, Wellspring Capital Partners IV, L.P., WCM Genpar IV, L.P., WCM Genpar IV GP, LLC, Alexander E. Carles, Bradley Johnson, F. Hewitt Grant, Charles E. Walker, Jr., Todd Boehly, Bernard Ziomek, and Andrew Kupchik,<br><br>Defendants. | Adversary Proceeding #: 19-80071-dd<br><br><br><br>**ORDER ON CHOICE OF LAW AND SUMMARY JUDGMENT** |

## I. INTRODUCTION

This matter is before the Court to determine which state's principles will apply to the substantive claims asserted in the above-styled adversary proceeding,[1] as well as to adjudicate pending cross-motions[2] for summary judgment. The matter has been fully briefed and is ripe for review. Having reviewed the manifold briefs, related authorities submitted by the parties, and the record in this case, the Court determines that South Carolina is the applicable law under § 544(b) for Plaintiff Ronald Friedman's, the Trustee ("Plaintiff" or "Trustee") of the SportCo Creditors' Liquidation Trust (the "Trust"), claims against Todd Boehly, Andrew Kupchik, Charles E. Walker

---

[1] Dkt. Nos. 270, 276, 277, 278, 287, 288, 290, 291, & 294.
[2] Dkt. Nos. 305, 311, 316, & 317 (collectively, the "Cross-Motions").

1

Jr., and F. Hewitt Grant (collectively, the "Remaining Defendants").[3] Furthermore, for the reasons stated below, the parties' competing motions for summary judgment are denied.

## II.    FACTUAL & PROCEDURAL HISTORY

This is a fraudulent conveyance action in which Plaintiff, standing in the shoes of certain creditors of the debtors, seeks to avoid the transfer of funds in the form of dividends, which were paid as part of second lien financing transactions entered into by borrowers Ellett Brothers, LLC ("Ellett"), Evans Sports, Inc., Jerry's Sports, Inc., Outdoor Sports Headquarters, Inc., Simmons Guns Specialists, Inc., and Bonitz Brothers, Inc. and lenders Prospect Capital Corporation ("Prospect") and Summit Capital Partners ("Summit").

A South Carolina limited liability company, Ellett was a sporting goods distributor. In 2008, Wellspring Capital, through its fund, Wellspring Capital Partners, acquired Ellett. Wellspring Capital formed SportCo Holdings, Inc. ("SportCo") to serve as a holding company for United Sporting Company, Inc. ("United Sporting"), Ellett's direct parent; Ellett; and its subsidiaries. Ellett achieved high sales and revenues and had significant operations until sometime in 2016, when its profits began to decrease. In June 2019, SportCo and its subsidiaries[4] (the "Debtors") filed chapter 11 bankruptcy cases in the United States Bankruptcy Court for the District of Delaware.

In 2012, the year that Ellett allegedly "achieved record sales and earned revenues of approximately $1.2 billion," Ellett and its operating subsidiaries (the "Borrowers") entered into a Third Amended and Restated Loan and Security Agreement and a Second Lien Loan and Security

---

[3] On November 18, 2022, the Trustee's claims against Wellspring Capital Management, Wellspring Capital Partners IV, L.P., WCM GenPar IV, L.P., and WCM GenPar IV GP, LLC (collectively, the "Wellspring Defendants") were dismissed pursuant to a settlement agreement. (Dkt. No. 322).

[4] The Debtors in the bankruptcy cases are SportCo Holdings, Inc.; Ellett Brothers, LLC; United Sporting Company, Inc.; Bonitz Brothers, Inc.; Evans Sports, Inc.; Jerry's Sports, Inc.; Outdoor Sports Headquarters, Inc.; Quality Boxes, Inc.; and Simmons Guns Specialties, Inc.

Agreement (collectively, the "Loan Agreements") with lenders including Prospect Capital Corporation ("Prospect"), pursuant to which Prospect and the other lenders loaned $280 million to the Borrowers. (Dkt. No. 178). Over $134 million of the loan proceeds were used to fund distributions to Wellspring Capital Partners, WCM GenPar IV, L.P., WCM GenPar IV GP, LLC, F. Hewitt Grant, Charles E. Walker, Jr., Todd Boehly, Bernard Ziomek,[5] and Andrew Kupchik (collectively, the "Transferee Defendants"). The Remaining Defendants—Todd Boehly, Andrew Kupchik, Charles E. Walker Jr., and F. Hewitt Grant—were each equity holders of SportCo at the time of the transfers and were recipients of transfers.

On March 7, 2013, the Borrowers entered into a First Amendment to the Loan Agreements (the "First Amendment"), pursuant to which Prospect loaned the Borrowers an additional $60 million. Ellett used $54,860,549.74 of the First Amendment loan proceeds to fund distributions to the Transferee Defendants. A second amendment to the Loan Agreements (the "Second Amendment") was executed on September 30, 2014. The Loan Agreements and the First and Second Amendments each contain a choice of law provision, providing that New York law applies. The choice of law provision in the Loan Agreements states:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York; provided, however, that if any of the Collateral shall be located in any jurisdiction other than New York, the laws of such jurisdiction shall govern the method, manner and procedure for foreclosure of Agent's Lien upon such Collateral and the enforcement of Agent's other remedies in respect of such Collateral to the extent that the laws of such jurisdiction are different from or inconsistent with the laws of the State of New York. As part of the consideration for new value received, and regardless of any present or future domicile or principal place of business of Borrowers, any Lender or Agent, each Borrower hereby consents and agrees that the state courts for the State of New York,

---

[5] Defendant Bernard Ziomek died before Plaintiff could effectuate service upon him (Dkt. Nos. 56-1 and 58). Upon Plaintiffs admission, neither Ziomek nor his estate were ever served with the complaint during the pendency of this case. The Court previously determined any claims against Mr. Ziomek were, therefore, a nullity, and dismissed Ziomek pursuant to Fed. R. Civ. P. 4(m). (Dkt. No. 326).

>or, at Agent's option, the United States District Court for the Southern District of New York, shall have jurisdiction to hear and determine any claims or disputes among Borrowers, Agent and Lenders pertaining to this Agreement or to any matter arising out of or related to this Agreement. Each Borrower expressly submits and consents in advance to such jurisdiction in any action or suit commenced in any such Court, and each Borrower hereby waives any objection that such Borrower may have based upon lack of personal jurisdiction, improper venue or forum non conveniens and hereby consents to the granting of such legal or equitable relief as is deemed appropriate by such Court. Each Borrower hereby waives personal service of the summons, complaint and other process issued in any such action or suit and agrees that service of such summons, complaint and other process may be made by certified mail addressed to such Borrower at the address set forth in this Agreement and that service so made shall be deemed completed upon the earlier of such Borrower's actual receipt thereof or three (3) days after deposit in the U.S. mails, proper postage prepaid. Nothing in this Agreement shall be deemed or operate to affect the right of Agent to serve legal process in any other manner permitted by law, or to preclude the enforcement by Agent of any judgment or order obtained in such forum or the taking of any action under this Agreement to enforce same in any other appropriate forum or jurisdiction.

The choice of law provision contained in the First Amendment, executed March 7, 2013, states:

>Governing Law; Consent to Jurisdiction; WAIVER OF JURY TRIAL. This Agreement and the rights and obligations of the parties hereunder shall be governed by, and construed and interpreted in accordance with, the law of the State of New York. Sections 14.20 and 14.21 of the Loan Agreement are hereby incorporated by reference as if fully stated herein, *mutatis mutandis*. THE BORROWERS, THE AGENT AND THE LENDERS HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE EXTENT PERMITTED BY APPLICABLE LAW, TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT AND FOR ANY COUNTERCLAIM THEREIN.

The choice of law provision contained in the Second Amendment, executed September 30, 2014, states:

> This Agreement shall be governed by, and construed in accordance with, the law of the State of New York and the validity, interpretation, construction, and performance hereof shall be governed by and construed and enforced in accordance with, and any claim by any party hereto against any other party hereto (including any claims sounding in contract or tort law arising out of the subject matter hereof and any determinations with respect to post-judgment interest) shall be determined in accordance with, the internal laws of the State of New York for contracts made and to be performed wholly within the State of New York (excluding the laws applicable to conflicts or choice of law that would require the application of the law of any other jurisdiction).

In October 2017, Wellspring Capital was contemplating a purchase of AcuSport, a competitor, by Ellett, for $14.8 million. In connection with this contemplated purchase, Alexander Carles, a managing partner of Wellspring Capital and an officer and director of SportCo and its subsidiaries, and Bradley Johnson, the president and chief executive officer of SportCo and its subsidiaries, sought to convince Prospect to forbear from exercising any remedies in the event of a payment default. Specifically, Mr. Carles and Mr. Johnson represented to Prospect that a purchase of AcuSport would result in: (1) Debtors' capturing 20 to 30 percent of AcuSport sales; (2) Acquisition of $14 million worth of AcuSport's inventory at a significant discount; and (3) Realization of an immediate $7 million profit from the sale of the inventory acquired in the purchase. From October 2017 to April 2018, Mr. Carles and Mr. Johnson sent numerous emails to representatives of Prospect, attempting to induce Prospect to agree to forego exercising its rights in the event of a default. In April 2018, Prospect agreed to defer two quarters of cash interest payments. It had previously received notification, in early 2018, that the Borrowers would default on their obligation under the Loan Agreements and the Amendments in the second quarter of 2018. On December 31, 2018, the Borrowers defaulted on their obligations under the Loan Agreements and the Amendments.

An action was commenced by Prospect Capital Corporation in South Carolina state court and was removed to this Court on September 6, 2019. In the ensuing days, the parties filed motions to dismiss (Dkt. Nos. 85, 89, 90, 91, 92, & 93), and the Court issued an Order Granting Dismissal (Dkt. No. 136) followed by an Order Granting Plaintiff's Motion to Reconsider (Dkt. No. 149), which vacated the Court's finding that the first and second causes of action asserted by Plaintiff for fraudulent conveyances under S.C. Code § 27-23-10 should be dismissed due to the Plaintiff's failure to adequately plead insolvency. Plaintiff's surviving allegations from the Second Amended Complaint (Dkt. No. 178) are (1) avoidance and recovery of fraudulent transfers by Ellett against the Remaining Defendants pursuant to 11 U.S.C. §§ 544 and 550 and S.C. Code § 27-23-10, and (2) avoidance and recovery of fraudulent transfers by SportCo against the Remaining Defendants pursuant to 11 U.S.C. §§ 544 and 550 and S.C. Code § 27-23-10.

Previously, the Court issued an order on June 8, 2022 (Dkt. No. 282) on the supplemental briefing schedule for choice of law issues and addressed an inquiry regarding whether the parties could brief choice of law as partial summary judgment. The Court's Final Amended Scheduling Order (Dkt. No. 252) established formal briefing on choice of law was appropriate in advance of substantive motions practice and submissions on the correct governing law would be a standalone issue separate from summary judgment briefing. Accordingly, Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 270) was denied without prejudice and with leave to refile pursuant to the Final Amended Scheduling Order (Dkt. No. 252). The Court indicated it would treat Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 270) as a Statement of Position on Choice of Law instead.

With this background, the Court considers the pending motions.

### III. LEGAL STANDARD

#### a. Choice of Law

For tort claims, South Carolina uses the *lex loci delicti* analysis of the First Restatement of Conflict of Laws.[6] "The *lex loci* doctrine is derived from the vested-rights approach which holds that a plaintiff's cause of action 'owes its creation to the law of the jurisdiction where the injury occurred and depends for its existence and extent solely on such law.'" *Trahan v. E.R. Squibb & Sons, Inc.*, 567 F. Supp. 505, 508 (M.D. Tenn. 1983) (quoting *Winters v. Maxey*, 481 S.W.2d 755, 756 (Tenn. 1972)). Under the traditional or "vested-rights" approach, "the cause of action was considered to be created in the state of the tort, and the capacity to sue or immunity or defense was considered part and parcel of those rights." 29 A.L.R.3d 603 (1970). Thus, under the traditional *lex loci delicti* test, the court applies the First Restatement's reasoning where "the place of the harm is defined as 'the state where the last event necessary to make an actor liable for an alleged tort takes place.'" *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) (quoting RESTATEMENT (FIRST) OF CONFLICT OF LAWS § 377 (1934)).

The acts and events necessary to constitute a tort is a question of law that varies depending on the state. Restatement (First) of Conflict of Laws § 377 cmt. 1 (AM. L. INST. 1934). Applying the South Carolina choice of law rules, the place of wrong is the location where the injury occurred, which is not necessarily the domicile of the plaintiff. *Rogers v. Lee*, 414 S.C. 225, 234, 777 S.E.2d 402, 407 (S.C. Ct. App. 2015). Further, South Carolina law provides "*lex loci delicti* is determined by the state in which *the injury occurred*, not where the results of the injury were felt or where the damages manifested themselves." *Id.* at 231, 777 S.E.2d at 405.

---

[6] The goal of this approach is to "reduce forum shopping and increase predictability and uniformity" of result. *See* Yasamine J. Christopherson, *Conflicted About Conflicts? A simple Introduction to Conflicts of Law*, 21 S.C. LAW. 30, Sept. 2009, at 31.

For contractual disputes, under South Carolina's traditional choice-of-law rules the parties to a contract are to be afforded some latitude in selecting the law that is to govern their dealings. *See Livingston v. Atl. Coast Line R. Co.*, 176 S.C. 385, 180 S.E. 343 (1935). In the absence of a contractual choice of law provision, South Carolina follows the doctrine of *lex loci contractu* in interpreting and giving effect to contracts. *Id.* at 391, 180 S.E. at 345 ("It is fundamental that unless there be something intrinsic in, or extrinsic of, the contract that another place of enforcement was intended, the lex loci contractu governs. If the contract be silent thereabout, the presumption is that the law governing the enforcement is the law of the place where the contract is made."). With respect to such contract claims, "the substantive law of the place the contract was allegedly formed applies." *See King v. Marriott International, Inc.,* 520 F.Supp.2d 748, 753 (D.S.C. 2007).

b. **Summary Judgment**

Federal Rule of Civil Procedure 56, made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is appropriate if the court determines "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party makes this threshold demonstration, the non-moving party may not rest upon mere allegations or denials averred in the pleading, but rather must, by affidavits or other means permitted by the rule, set forth specific facts showing that there is a genuine issue for

8

trial. *See* Fed. R. Civ. P. 56; *see also Celotex*, 477 U.S. at 323. A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citing *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "[T]he court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (citing *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

## IV. DISCUSSION

### a. Choice of Law

Authority on South Carolina choice of law rules with respect to fraudulent conveyance claims is scarce. However, as previously established, South Carolina generally follows the principles of *lex loci delicti* and *lex loci contractu* in determining substantive choice of law issues. The characterization of the claim is determined by reference to the law of the forum. *Ashmore v.*

9

*Dodds*, 262 F. Supp. 3d 341, 358 (D.S.C. 2017). As an initial matter, the Court finds no compelling evidence that the fraudulent transfer claims are governed by contractual choice-of-law provisions. Nonetheless, the choice-of-law clause in the Second Lien Loan Agreement expressly limits its application to disputes between the parties. Because the Remaining Defendants are not parties to the Second Lien Loan Agreement, and they have not sustained their burden to show that they are third-party beneficiaries of the contract, they cannot benefit from its choice-of-law or forum-selection provisions.[7]

On the other hand, "[w]hether a fraudulent conveyance claim should be characterized as a tort action is uncertain and disputed among American jurisdictions." *Id.* The question of which law should apply to the Plaintiff's fraudulent conveyance claims under South Carolina choice of law rules is a question of South Carolina state law. The Court recognized this as potentially outcome determinative of the fraudulent conveyance claims pending in this matter, particularly since it appears there is no controlling precedent on the question in the Supreme Court's prior decisions. Accordingly, the Court certified a question of law on the issue to the Supreme Court. (Dkt. No. 151). The South Carolina Supreme Court declined to answer the question on the grounds that "existing precedent provides an answer to the certified question" and cited to a proposition from *Oskin v. Johnson*, 400 S.C. 390, 397, 735 S.E.2d 459, 463 (2012) that "[a]n action to set aside a conveyance under the Statute of Elizabeth is an equitable action." (Dkt. No. 154).

---

[7] Even without the clear limiting language in the Second Lien Loan Agreement, the Court is dubious that fraudulent transfer claims are governed by contractual choice-of-law provisions. *See In re Morse Tool, Inc.*, 108 B.R. 384, 387 (Bankr. D. Mass. 1989) ("First, a fraudulent conveyance suit is not a suit on a contract. The conveyance sometimes occurs pursuant to a contract, as did the alleged fraudulent conveyance in this case, but it need not.").

10

Unaided by clearer guidance from the Supreme Court and after much consideration, the Court finds the application of the conflict-of-laws rules governing torts to be appropriate.[8] "South Carolina law clearly provides *lex loci delicti* is determined by the state in which *the injury occurred,* not where the results of the injury were felt or where the damages manifested themselves." *Rogers v. Lee*, 414 S.C. 225, 231, 777 S.E.2d at 405 (emphasis in original); *see also In re J.R. Deans Co., Inc.*, 249 B.R. 121, 129 (Bankr. D.S.C. 2000) (holding that South Carolina law applied under § 544(b) without considering the residence or location of the debtor's creditors). In the context of a fraudulent-transfer case—especially one, like here, where creditors in multiple states remain unpaid—other courts have held the injury occurs where the debtor resides, not where the debtor's creditors are located.[9] The Court finds these decisions persuasive, because to hold otherwise would lead to the untenable result that multiple states' laws govern whether a debtor's transfer was fraudulent. Accordingly, South Carolina is the applicable law under § 544(b) for the Trustee's claims against the Remaining Defendants. Consequently, the Statute of Elizabeth governs the transfers made by Debtors to the Remaining Defendants.

---

[8] While not controlling with respect to the choice of law issue presently before the Court, South Carolina caselaw has recognized tort claimants may avail themselves of the Statute of Elizabeth. *See Lowry v. Pinson*, 18 S.C.L. 324 (S.C. App. L. & Eq. 1831) ("The [Statute of Elizabeth] extends to persons having a right of action for damages for a tort, as well as to creditors.").

[9] *See In re Mirant Corp.*, 2010 WL 8708772, at *21 ("[T]he real injury to creditors is the debtor's failure to pay their claims. Typically, the decision not to pay such claims and the failure to pay occurs at the place where the debtor has its principal place of business."); *see Goodman v. H.I.G. Cap., LL (In re Gulf Fleet Holdings)*, 491 B.R. 747, 765 (Bankr. W.D. La. 2013) (applying Louisiana law because "[t]he principal place of business of the debtor entities is Louisiana and the transfers challenged by the Trustee are centered in Louisiana"); *Kaiser Steel Corp. v. Jacobs (In re Kaiser Steel Corp.)*, 87 B.R. 154, 159–60 (Bankr. D. Colo. 1988) (applying California law to § 544(b) claim because, among other reasons, the debtor's principal place of business was in California); *Tronox, Inc. v. Kerr-McGee Corp. (In re Tronox Inc.)*, 503 B.R. 239, 266 (Bankr. S.D.N.Y. 2013) ("There is no dispute that the applicable fraudulent conveyance law is the Uniform Fraudulent Transfer Act as adopted by Oklahoma, the State where Kerr–McGee's and Tronox's headquarters were located at all relevant times.").

### b. Summary Judgment

The Trustee and Remaining Defendants have submitted competing motions for summary judgment. In the Plaintiff's Motion for Summary Judgment (Dkt. No. 305), the Trustee requests that the Court grant his motion for summary judgment and hold the Remaining Defendants liable, under §§ 544(b) and 550 of the Bankruptcy Code, as follows:

| **Defendant** | **Recovery under 11 U.S.C § 550** |
|---|---|
| F. Hewitt Grant | $955,070.13 |
| Charles E. Walker, Jr. | $95,422.57 |
| Todd Boehly | $2,814,825.03 |
| Andrew Kupchick | $1,688,895.02 |

In their respective motions for summary judgment (Dkt. Nos. 311, 316, & 317), the Remaining Defendants ask the Court to grant summary judgment in their favor and dismiss the Trustee's claims asserted against them.

Here, there is a dispute as to whether the transfers are properly categorized as dividends or transfers that defraud creditors, as Plaintiff contends. Whereas "summary judgment is appropriate in cases where the facts are clearly insufficient to satisfy the standard, when there is a close question and reasonable minds could differ when weighing all the facts against the law, then summary judgment is inappropriate." *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 208 (4th Cir. 2014) (internal citations omitted). A motion for summary judgment necessarily presents a limited record, devoid of the nuances of live testimony and without benefit of colloquy with counsel in the context of presentation of the evidence. The Court has discretion to deny a motion for summary judgment "in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Kennedy v. Silas Mason Co.*, 334 U.S. 249 (1948)); *United States v. Certain Real &*

*Pers. Prop. Belonging to Hayes,* 943 F.2d 1292, 1297 (11th Cir. 1991) ("A trial court is permitted, in its discretion, to deny even a well-supported motion for summary judgment, if it believes the case would benefit from a full hearing.").

Plaintiff is not entitled to summary judgment because he has not made a sufficient showing to establish the existence of elements essential to his case, and on points which he bears the burden of proof. Although Plaintiff's evidence is not sufficient to support an award of summary judgment in his favor, neither is it so weak that it does not raise a genuine issue of fact. Whether his argument (or that of the Remaining Defendants) is persuasive requires a weighing of evidence, which is not proper at this stage in the proceedings. *See Anderson,* 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). Bearing in mind that fraudulent transfer actions sound in equity, the Court recognizes a balancing of the equities is likely necessary to determine the appropriate relief and evaluate the defenses asserted. In light of the dearth of factually similar South Carolina precedent, a ruling on the issues here substantially depends on the full development of the facts at trial. Because there exist triable issues of genuine material fact, the Cross-Motions for summary judgment must be denied.[10]

---

[10] In days gone by, litigants might have seen a sign at the courthouse advising "no spittin', no cussin', and no summary judgment." *See* Susan T. Wall, "No Spittin', No Cussin' and No Summary Judgment": Rethinking Motion Practice, 8 S.C. LAW. 29, 29 (1997) (likening South Carolina judges' reluctance to embrace summary judgment to a sign hanging in an Alabama courthouse that declared, "No Spittin', No Cussin' and No Summary Judgment"). This sentiment reflected the long-held belief that trials are the best way to resolve legal disputes. All told, the briefs in the instant case run well over 100 pages and are accompanied by thousands of pages of declarations and exhibits. *See, e.g.*, Dkt. Nos. 305, 311, 314, 316, 317, 321, 333, 334, 337, 338, 340, 341, & 342. While sheer size alone is not fatal to a summary judgment motion, the parties' papers demonstrate a panoply of genuine disputes of material fact that will require a trial, and an opportunity to evaluate witness credibility, to properly resolve.

The Court finds there is a disputed fact regarding the characterization of the transfers and ultimately concludes neither party's contentions establish entitlement to judgment as a matter of law on this critical question. In this tangled web of facts and law in which this case is enmeshed, the Court remains mindful that there is more unraveling yet to be done. That additional unraveling, though, is for trial.[11]

## V.    CONCLUSION

For the foregoing reasons, the competing motions for summary judgment (Dkt. Nos. 305, 311, 316, & 317) are denied.[12] This matter shall proceed to trial for the purpose of determining whether the transfers at issue are void, voidable, or permissible under applicable law.[13] The parties shall, within twenty-one (21) days after the entry of this Order, proffer a proposed trial schedule to the chambers of the judge assigned to this adversary proceeding.

**FILED BY THE COURT**
**05/12/2023**



Entered: 05/12/2023

David R. Duncan
US Bankruptcy Judge
District of South Carolina

---

[11] Although none of the parties have, at this time, moved to withdraw the reference, the Court notes "Defendants assert[ed] that if the claims [were] found to be core claims, the Bankruptcy Court does not have constitutional authority to enter final judgment" in the Adversary Proceeding Report filed March 5, 2021. (Dkt. No. 169).

[12] In the interest of resolving loose ends, the Motion for an Order Deeming Prospect Capital Corporation a Party Opponent (Dkt. No. 310) is denied as moot. The Court dismissed the Trustee's claims against the Wellspring Defendants who filed the Wellspring Party Opponent Motion. *See Porter v Clarke*, 852 F.3.d 358, 363 (4th Cir 2017) ("a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome") (internal citation omitted). The Remaining Defendants did not join in the Wellspring Party Opponent Motion. Neither did the Remaining Defendants submit their own motions regarding Prospect Capital Corporation's alleged status as a Party Opponent.

[13] Given the byzantine state of the docket in this case, the Court finds it necessary to make plain that any other pending motions are rendered moot by this Order.